IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

YVONNE LILA BOWMAN,

    Plaintiff,

vs.                                               CASE NO. CV-10-J-0312-M

MICHAEL ASTRUE, Commissioner
of Social Security,

    Defendant.

## MEMORANDUM OPINION

The plaintiff, Yvonne Lily Bowman, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits and Supplemental Security Income.

Plaintiff filed her application for Disability Insurance Benefits on November 21, 2006, alleging an inability to work from October 21, 2006. (R. 52–54). She later applied for Supplemental Security Income on September 25, 2008, alleging an inability to work from November 1, 2006. (R. 60–63). The application was denied initially on December 12, 2006, (R. 34–37), and again by an Administrative Law Judge on August 19, 2009, (R. 13–19).

**Factual Background**

At the time of the hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 56 years old and had graduated from high school. (R. 319–20). Plaintiff's original alleged onset date was October 1, 2006; she amended this date to October 15, 2007, her 55th birthday. (R. 52, 119–20).

The plaintiff alleges an inability to work due to chronic neck and back pain (R. 305–06). She states that she has difficulty bending down or reaching up for things, and can't pick up or carry anything over five pounds. (R. 81). She doesn't go to the grocery store unless her husband can go with her and her husband sometimes helps her get out of the bathtub, put on and tie her shoes, and get dressed. (R. 81–82). She does very little housework and her husband does most of the cleaning and cooking. (R. 81–84). Her husband also does most of the yard work and the shopping. (R. 85–86). She says it is not safe for her drive and that she has trouble getting in and out of the car due to the pain. (R. 86). She estimates she can stand for ten minutes, walk for thirty to forty-five minutes, and sit for thirty minutes to an hour. (R. 81). She has to take a break every ten to thirty minutes because of her neck and back pain. (R. 81–87).

The ALJ found that plaintiff suffers from the following severe impairments: degenerative disc disease, cervicalgia, and cervical spondylosis. (R. 16). The ALJ

found that none of these impairments constituted an impairment or combination of impairments that meets or medically equals one of the listed impairments. (R. 17). The ALJ further determined that plaintiff had the residual functional capacity as described in Dr. Rickless's Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("Dr. Rickless's report"). (R. 17, 286–94). The ALJ then found plaintiff was capable of performing her past relevant work, relying on the vocational expert's finding that plaintiff's prior work history consisted of light and medium semi-skilled work, with no transferrable skills. (R. 18, 317).[1] Finally, the ALJ found that, assuming plaintiff was unable to perform her past relevant work, there were other jobs she could perform and she was therefore not disabled as defined by the Social Security Act. (R. 18–19).[2]

The plaintiff's medical records demonstrate as follows:

Plaintiff was first seen by Dr. Chona Huang, who referred her for a cervical MRI. (R. 128). This MRI, taken on July 18, 2005, indicated "multi-level neural foraminal changes." (*Id.*). She had a follow up on the MRI at Baptist Health Center on July 21, 2005, in which the doctor indicated that her muscle spasms

---

[1] The vocational expert found that plaintiff could perform her former work as a retail sales clerk (light, semiskilled). (R. 115, 317).

[2] The vocational expert found that plaintiff could perform work as a cashier (light, semiskilled). (R. 19, 116).

were still present, she held her neck near rigid, and "none of the pain meds [had] helped at all." (R. 139). She began taking Prednisone, and her symptoms improved: "back is much better and for two days after starting Prednisone, she felt great." (R. 130). However, she had an adverse reaction to the Prednisone, as it caused muscle weakness. (R. 130, 179).

     Plaintiff saw Dr. Michelle Turnley regularly for the next year, with records spanning from August 25, 2005, to December 16, 2006. (R. 164–69, 171–80, 203–07). She had tenderness in her spine. (R. 177, 179). Plaintiff had lumbar x-rays showing mild degenerative disk disease. (R. 173, 180). Her exams and imaging studies also revealed multilevel cervical spondylosis and cervicalgia. (R. 166, 168, 173, 175, 177). She was prescribed Lyrica and Lorcet. (R. 206, 282). Moreover, plaintiff received a series of trigger point injections to help with the pain, (R. 166, 168, 171, 175), and a cervical epidural block, (R. 142, 164). This epidural block gave her about three days of relief, but her pain increased when she returned to work. (R. 206). Dr. Turnley also recommended that plaintiff change her to duty at work to light duty with no overhead lifting. (R. 166, 175, 203). Plaintiff was referred for a functional capacity evaluation and physical performance test. (R. 203, 204).

     Plaintiff had the Physical Work Performance Evaluation at Sports

4

Rehabilitation of Alabama on October 30, 2006, which indicated that plaintiff could tolerate sedentary work for eight hours a day and forty hours a week. (R. 146–57). However this conclusion was "significantly influenced by [plaintiff]'s self-limiting and inconsistent behavior and indicates her minimal rather than her maximal ability." (R. 146). The examiner indicated that plaintiff self-limited approximately 95% of the time. (*Id.*). Plaintiff made statements during the examination indicating that she felt "hurt in [her] neck and low back when [she] tried to lift more, felt weak in the legs," was fatigued, and found it "difficult to move." (R. 147).

Plaintiff also had a Physical Residual Functional Capacity Assessment on December 11, 2006. (R. 208–15). The examiner found that plaintiff could lift twenty pounds occasionally and ten pounds frequently, (R. 209), and concluded that "claimant's statements about her conditions are credible and consistent with the MER findings," (R. 213).

Plaintiff first saw her primary care physician, Dr. April Ponder, about her back pain on December 17, 2007, and was referred for further evaluation. (R. 260). As such, plaintiff saw Dr. Carter Morris on January 28, 2008. (R. 250–52). He examined her lumber spine and found the test results to be normal. (R. 251). After finding "back and right leg pain of uncertain etiology," he recommended an

MRI scan of the lumber spine and an EMG and nerve conduction studies of the right leg. (R. 250–51). Plaintiff had those tests done at Brookwood Medical Center on January 31, 2008. (R. 255–56). The MRI showed a "[b]ulging disc at the L4-L5 level, slightly more to the left side." (R. 255). The EMG and nerve conduction study findings were most indicative of "a right L5 radiculopathy." (R. 256).

Plaintiff revisited Dr. Turnley on February 6, 2008. (R. 217). Dr. Turnley questioned plaintiff's pain level and absence from treatment, noting that:

> She was treated . . . with medications and therapy, and she did not come back in a year for any further treatment. Indeed, today when I explained to her that she is self-limited significantly on her FCE and she did not come back for treatment, I questioned how intense her pain was, so she left without obtaining any treatment today.

(R. 217). She noted that plaintiff "swings her legs, jumped up and on the exam table, and moves her neck in a fairly normal range." (*Id.*).

Plaintiff was seen again by her primary care physician, Dr. Ponder, in October 2008 and January 2009, and was treated with muscle relaxers and pain medication. (R. 280). She was referred to Dr. Hugh Maddox for further examination. (R. 282). On March 31, 2009, plaintiff received a transforaminal selective epidural. (*Id.*). Plaintiff "felt better after[]" the epidural. (*Id.*). On April 30, 2009, she received "diagnostic interarticular facet joint injections." (R. 284). After these injections, her "pain was significantly improved" and "the leg pain was

6

gone on the right side." (*Id.*). Dr. Maddox also prescribed her Lorcet, Lyrica, and Lunesta, and gave her samples of Ambien CR. (R. 282, 284).

Finally, plaintiff had a Musculoskeletal Examination with Dr. Morton Rickless on May 14, 2009. (R. 286–94). Dr. Rickless stated that plaintiff did "not appear to be reliable because of inconsistencies in the examination." (R. 286). He states, "She was observed to easily bend over in the hallway and take off her shoes, yet in the exam room she could hardly bend over. There was also inconsistencies in the sitting and supine straight leg raising." (*Id.*). However, Dr. Rickless's overall conclusion was:

> [Plaintiff] would have no limitations on sitting or standing. She could walk for reasonable periods of time. Lifting would be limited to light to medium weights. I believe she could handle objects. No hearing or speaking limitations. She might have long distant travel limitations. This is somewhat different from what she verbally says . . . .

(R. 288). Specifically, Dr. Rickless found that plaintiff could lift and carry 20 pounds frequently, with 21 to 50 pounds occasionally due to back and neck pain; sit for five hours, stand for four hours, and walk for three hours without interruption; occasionally climb stairs and ramps, balance, stoop, kneel, and operate foot controls; occasionally work around moving mechanical parts; but never climb ladders or scaffolds, crouch, crawl, or work at unprotected heights. (R. 289–93).

## Standard of Review

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). This court may not decide facts anew, re-weigh the evidence or substitute its judgment for that of the ALJ, even if the court finds that the weight of the evidence is against the Commissioner's decision. *Martin*, 894 F.2d at 1529.  This court must affirm the decision of the ALJ if it is supported by substantial evidence. *Miles v. Chater*, 84 F.3d 1397 (11th Cir. 1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993); *McRoberts v. Bowen*, 841 F.2d 1077, 1080

(11th Cir. 1988); *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). The Commissioner's "failure to . . . provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## Legal Analysis

Plaintiff argues that the ALJ failed to properly evaluate the credibility of her testimony regarding her symptoms. Pl.'s Brief at 4–10. The Commissioner argues that plaintiff failed to show she was as limited by her symptoms as she claimed. Comm'r's Brief at 5–20. However, regardless of whether the ALJ properly evaluated plaintiff's credibility, this court finds that the ALJ's decision conflicts with the substantial weight of the evidence.

Although the evidence shows that many of the doctors thought that plaintiff might have been exhibiting self-limiting behavior during her examinations, all doctors agree that she is limited to, at best, "light work." Light work is defined as involving:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 220.132(b).[3] Furthermore, the ALJ concluded that plaintiff could perform a full range of light work, as described in Dr. Rickless's report.[4]

As stated earlier, plaintiff's amended onset date was her 55th birthday, which places her in the category of "advanced age." *See* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 201.00(f). She was a high-school graduate with no transferrable work skills and semi-skilled work experience. Thus, use of the "grids" is appropriate. *Walker*, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation."). Given the plaintiff's physical limitations, as well as the plaintiff's age, education, and past work experience, the Social Security regulations demand a finding of disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, rule 202.06.

The ALJ's determination that the plaintiff is not disabled is against the substantial weight of the evidence. The ALJ could only reach the result he did by ignoring the objective medical evidence regarding the plaintiff's physical conditions, which mandates reversal. This court finds that the substantial weight of the evidence dictates that the plaintiff has been disabled since her alleged onset

---

[3] By contrast, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 220.132(c).

[4] The Commissioner states that Dr. Rickless's report is consistent with a full range of light work. Comm'r's Brief at 3.

date and is therefore entitled to benefits.

## Conclusion

When evidence has been fully developed and points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made. *Reyes v. Heckler*, 601 F. Supp. 34, 37 (S.D. Fla. 1984). Thus, this court has the authority under 42 U.S.C. § 405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner's determination is in plain disregard of the overwhelming weight of the evidence. *Davis*, 985 F.2d at 534; *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984).

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and this case be **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion, which shall be done by separate order.

**DONE** and **ORDERED** this the 22nd day of November 2010.

*[signature]*

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE